IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Edward W. Nottingham**

Civil Action No. 07–cv–01286–EWN–CBS


ALEXANDER BONDARENKO,

      Plaintiff,

v.

JOHN E. POTTER, Postmaster General,
U.S. Postal Service,

      Defendant.

---

## ORDER AND MEMORANDUM OF DECISION

---

      This is an employment discrimination case. Plaintiff Alexander Bondarenko alleges that

Defendant John E. Potter, Postmaster General, illegally discriminated against him on the basis of

age and disability, and retaliated against him for various protected activities. This matter is

before the court on "Motion for Leave to File Plaintiff's Amended Complaint," filed October 11,

2007, and Defendant's "Motion for Summary Judgment and Supporting Brief," filed February

27, 2008. Jurisdiction is proper pursuant to 28 U.S.C. § 1331.

## FACTS

### 1.    *Factual Background*

      On April 12, 1986, Plaintiff was hired by Defendant as a full-time carrier at the Littleton,

Colorado, post office. (Mot. for Summ. J. and Supporting Br. [hereinafter "Def.'s Br."],

Statement of Undisputed Material Facts [hereinafter "SOF"] ¶ 1 [filed Feb. 27, 2008]; *admitted at* Pl.'s Resp. to Mot. for Summ. J. [hereinafter "Pl.'s Resp."], Resp. to Statement of Undisputed Material Facts [hereinafter "RSOF"] ¶ 1 [filed Mar. 3, 2008].) On February 10, 1995, Plaintiff filed a claim with the Department of Labor's Office of Worker's Compensation claiming that he had injured his back while performing his duties as a carrier. (*Id.*, SOF ¶ 2; *admitted at* Pl.'s Resp., RSOF ¶ 2.)

Due to medical restrictions relating to Plaintiff's back injury, Defendant offered him a series of "limited duty" assignments. (*Id.*, SOF ¶ 3; *admitted at* Pl.'s Resp., RSOF ¶ 3.) Such assignments are temporary, are designed to work within an injured employee's medical restrictions, and can be made to different work locations, although the employee remains on the payroll of his original employment location, which is known as his "official duty station." (*Id.*, SOF ¶¶ 4–5; *admitted at* Pl.'s Resp., RSOF ¶¶ 4–5.)

On December 2, 1998, Plaintiff refused a limited duty job offer at the Capitol Hill Annex, and, in January 1999, filed an Equal Employment Opportunity ("EEO") complaint alleging that reassignment to this annex was discriminatory. (*Id.*, SOF ¶¶ 6–7; *admitted at* Pl.'s Resp., RSOF ¶¶ 6–7.) On January 27, 1999, this complaint was settled. (*Id.*, SOF ¶ 8; *admitted at* Pl.'s Resp., RSOF ¶ 8.)

In September 2003, Plaintiff applied for two "facilities contract technician" vacancies at the Western Facilities Service Office ("WFSO"). (*Id.*, SOF ¶ 9; *admitted at* Pl.'s Resp., RSOF ¶ 9.) On October 28, 2003, Keith LaShier selected Janet Davis and Bobbie Carney for these positions. (*Id.*, SOF ¶ 10; *admitted at* Pl.'s Resp., RSOF ¶ 10.) Mr. LaShier selected Ms. Davis

and Ms. Carney because he felt they were the most qualified applicants. (*Id.*, SOF ¶ 11; *admitted at* Pl.'s Resp., RSOF ¶ 11.) Specifically, Ms. Davis was deemed more qualified than Plaintiff because she been detailed to the "facilities contract technician" position for several months prior to her selection. (*Id.*, SOF ¶ 12; *admitted at* Pl.'s Resp., RSOF ¶ 12.) Similarly, Ms. Carney was deemed more qualified than Plaintiff because she had specific experience in this position due to her work as Mr. LaShier's administrative assistant. (*Id.*, SOF ¶ 13; *admitted at* Pl.'s Resp., RSOF ¶ 13.) Plaintiff, by contrast, did not have such relevant experience. (*See id.*, SOF ¶ 14; *admitted at* Pl.'s Resp., RSOF ¶ 14.)

Also in September 2003, Plaintiff applied for a "facilities contract specialist" position at the WFSO. (*Id.*, SOF ¶ 15; *admitted at* Pl.'s Resp., RSOF ¶ 15.) Mr. LaShier selected Reina Luongo for this position because she had more years of experience in facilities contracting than Plaintiff. (*Id.*, SOF ¶¶ 16–17; *admitted at* Pl.'s Resp., RSOF ¶¶ 16–17.) Another factor in this decision was the fact that Ms. Luongo gave the best interview. (*Id.*, SOF ¶ 18; *admitted at* Pl.'s Resp., RSOF ¶ 18.) Plaintiff never heard Mr. LaShier or Ms. Stencel make any comments about Plaintiff's age, or about the fact that he had previously filed an EEO complaint. (*Id.*, SOF ¶ 19; *admitted at* Pl.'s Resp., RSOF ¶ 19.) Neither party explains who Ms. Stencel is, or what role — if any — she played in the selections of Ms. Davis, Ms. Carney, and Ms. Luongo.

On December 3, 2003, Plaintiff contacted an EEO counselor and alleged that he had been discriminated against when he was passed over for the positions of "facilities contract technician" and "facilities contract specialist" on October 28, 2003, and November 13, 2003, respectively. (*Id.*, SOF ¶ 20; *admitted at* Pl.'s Resp., RSOF ¶ 20.) On March 1, 2004, Plaintiff

filed a formal EEO complaint alleging that he had been discriminated against on the basis of age and physical disability, as well as in retaliation for protected activity in 1998 and 1999 by being passed over for these positions.  (*Id.*, SOF ¶ 21; *admitted at* Pl.'s Resp., RSOF ¶ 21.)

Meanwhile, on January 13, 2004, Plaintiff applied for a "contract transportation specialist" position at the Western Area Office.  (*Id.*, SOF ¶ 22; *admitted at* Pl.'s Resp., RSOF ¶ 22.)  This position was only open to Executive and Administrative Schedule ("EAS") employees.  (*Id.*, SOF ¶ 23; *admitted at* Pl.'s Resp., RSOF ¶ 23.)  Despite this restriction, the parties dispute whether Plaintiff was eligible to apply for the position.  (*Compare* Def.'s Br., SOF ¶ 24, *with* Pl.'s Resp., SOF ¶ 24.)  Defendant curiously cites Mr. LaShier's deposition testimony, in which he admits that an employee without an EAS designation may nonetheless "apply for a higher-level position, and at that time that they are selected for that higher-level position, they could potentially change their employee designation."  (Def.'s Br., Ex. A-3 at 6 [LaShier Dep.].)  Defendant also cites the affidavit of Patricia McGinty, a human resources manager for the Western Area, in which Ms. McGinty affies that Plaintiff "did not meet the eligibility requirements" for the "contract transportation specialist" position because he did not have EAS designation.  (*Id.*, Ex. A-5 ¶¶ 3, 9 [McGinty Aff.].)  Plaintiff, by contrast, cites the affidavits of one co-worker and one supervisor, both of whom aver that Plaintiff was eligible to apply for the position, and who refer to an employee handbook allegedly so relating.  (Pl.'s Resp., Ex. 4 ¶ 2 [Roberts Aff.], Ex. 5 ¶ 5 [Hunter Aff.].)  This handbook, in turn, essentially relates that employees without EAS designation may be considered for relevant openings "[a]fter the

assessment of potential applicants [with EAS designations]." (Def.'s Br., Ex. A-10 at 2 [Handbook].)

On the same day he applied for the "contract transportation specialist" position, Plaintiff sent a letter to Ms. McGinty requesting an "approval for deviation" from the EAS designation requirement in order to apply for the vacant position. (*Id.*, Ex. A-6 at 2 [1/13/04 Letter].) On January 15, 2004, Ms. McGinty denied Plaintiff's request in a letter. (*Id.*, SOF ¶ 26; *admitted at* Pl.'s Resp., RSOF ¶ 26.) Ms. McGuinty's letter recited that Plaintiff was not eligible to apply for the position, and explained that, "[o]ccasionally, if there are not qualified non-bargaining unit employees for the position advertised, the position will be re-posted with the eligibility requirement extended to the bargaining unit." (*Id.*, Ex. A-7 at 2 [1/15/04 Letter].) Ms. McGuinty later affied that, at the time she sent this denial letter, she had not been aware of Plaintiff's age, alleged disability, or previous EEO activity. (*Id.*, Ex. A-5 ¶¶ 6–8, 11 [McGinty Aff.].) On March 23, 2004, Plaintiff filed a formal EEO complaint alleging that he had been discriminated against when Ms. McGinty denied his request for deviation from the EAS designation requirement. (*Id.*, SOF ¶ 30; *admitted at* Pl.'s Resp., RSOF ¶ 30.)

In the fall of 2006, the Postal Service issued a directive that all employees in the Colorado/Wyoming district who were not working in their official duty stations were to return to such stations. (*Id.*, SOF ¶ 31; *admitted at* Pl.'s Resp., RSOF ¶ 31.) As a result of this directive, Plaintiff and another employee were told to report back to their positions at the Littleton post office effective October 2, 2006. (*Id.*, SOF ¶ 32; *admitted at* Pl.'s Resp., RSOF ¶ 32.)

On October 2, 2006, Plaintiff reported to the Littleton post office and was advised that he would be performing a limited duty assignment consistent with his medical restrictions.  (*Id.*, SOF ¶ 33; *admitted at* Pl.'s Resp., RSOF ¶ 33.)  On October 3, 2004, Plaintiff notified his supervisor that he would not be returning to this post office and requested sick leave.  (*Id.*, SOF ¶ 34; *admitted at* Pl.'s Resp., RSOF ¶ 34.)  Plaintiff exhausted his sick leave after twenty-one days.  (*Id.*, SOF ¶ 35; *admitted at* Pl.'s Resp., RSOF ¶ 35.)  Plaintiff thereupon took annual leave, which he exhausted after thirty days.  (*Id.*, SOF ¶ 36; *admitted at* Pl.'s Resp., RSOF ¶ 36.) Plaintiff was then placed on leave without pay.  (*Id.*, SOF ¶ 37; *admitted at* Pl.'s Resp., RSOF ¶ 37.)

The parties dispute whether Plaintiff is currently employed with Defendant.  (*Compare id.*, SOF ¶ 38, *with* Pl.'s Resp., RSOF ¶ 38.)  Defendant points to the affidavit testimony of Sharon Hill, Postmaster of Littleton, Colorado, in which Ms. Hill affies that Plaintiff "has been in a Leave Without Pay status since exhausting his annual leave, still remains on the Postal Service rolls and has not been terminated."  (*Id.*, Ex. 9 at 4 [Hill Aff.].)  Plaintiff, by contrast, cites to a non-specified page of his own deposition in which he allegedly relates that he received "unemployment compensation after his termination of employment with Defendant," and also invokes three letters Defendant sent him in February and March 2007.  (*See* Pl.'s Resp., RSOF ¶ 38, Ex. 2 [2007 Letters].)  These letters advise Plaintiff that: (1) a claim for compensation due to injury or illness caused by the factors of his employment had been denied; (2) a request for permanent light duty assignment had been denied; and (3) a request for reasonable accommodations of an alleged disability was being considered.  (*Id.*, Ex. 2 at 2, 4–5 [2007

Letters].)  Plaintiff has never filed an EEO complaint alleging constructive discharge or unlawful termination of his employment.  (Def.'s Br., SOF ¶ 39; *admitted at* Pl.'s Resp., RSOF ¶ 39.)

Plaintiff currently works as a shelf-stocker for Wal-Mart in the hardware department.  (*Id.*, SOF ¶ 41; *admitted at* Pl.'s Resp., RSOF ¶ 41.)  Plaintiff walks approximately one-half mile every day, and his shelf-stocking duties require him to carry items up a step ladder to stock them on shelves as high as eight feet.  (*Id.*, SOF ¶¶ 40, 42; *admitted at* Pl.'s Resp., RSOF ¶¶ 40, 42.)  Plaintiff did not advise Wal-Mart that he had any physical work restrictions.  (*Id.*, SOF ¶ 43; *admitted at* Pl.'s Resp., RSOF ¶ 43.)

Plaintiff claims that the major life activity that is substantially affected by his back injury is sex, which he asserts he does not enjoy because it hurts his back.  (*Id.*, SOF ¶¶ 46–47; *admitted at* Pl.'s Resp., RSOF ¶¶ 46–47.)  Plaintiff was able to ski after injuring his back in 1996, and recently moved his belongings, including furniture, into a new residence with the help of his wife, two teenage daughters, and a friend.  (*Id.*, SOF ¶ 44; *admitted at* Pl.'s Resp., RSOF ¶ 44.)

Plaintiff's date of birth is XXXXXXXXX XX, 1955.  (*Id.*, SOF ¶ 48; *admitted at* Pl.'s Resp., RSOF ¶ 48.)  Ms. Davis's date of birth is XXXXXXXXX XX, 1953.  (*Id.*, SOF ¶ 49; *admitted at* Pl.'s Resp., RSOF ¶ 49.)  Ms. Luongo's date of birth is XXXXXXXXX XX, 1955.  (*Id.*, SOF  ¶ 50; *admitted at* Pl.'s Resp., RSOF ¶ 50.)  Neither party provided Ms. Carney's date of birth.

## 2.    *Procedural History*

On June 19, 2007, Plaintiff filed a complaint in this court. (Pl.'s Original Compl. [filed June 19, 2007].) On October 11, 2007, Plaintiff filed the instant motion to amend his complaint, and contemporaneously proffered a nearly identical complaint which alleged age and disability discrimination in connection with Defendant's decision not to promote him on two separate, but unspecified, occasions, and asserted that these decisions constituted retaliation against him for unspecified acts. (*See* Mot. for Leave to File First Am. Compl. [filed Oct. 11, 2007] [hereinafter "Am. Mot."]; Pl.'s First Am. Compl. ¶ 12 [filed Oct. 11, 2007] [hereinafter "Am. Compl."].) Although the record is slightly ambiguous, it appears that Plaintiff's motion to amend his complaint is unopposed. (*See* Am. Mot. at 1 [stating "Plaintiff has conferred with Defendant and Defendant has/has no objection to Plaintiff's filing this Amended Compl"].) I hereby grant Plaintiff's motion to amend his complaint.

On February 27, 2008, Defendant filed the instant motion for summary judgment, arguing that Plaintiff cannot prevail on his alleged age discrimination, disability discrimination, or retaliation claims as related in his amended complaint. (*See* Def.'s Br. at 8–12.) Moreover, Defendant argues that Plaintiff cannot prevail on a constructive discharge claim which this complaint may also arguably be read as asserting. (*See id.* at 12–13.) On March 17, 2008, Plaintiff responded. (*See* Pl.'s Resp.) On April 1, 2008, Defendant replied. (*See* Reply to Pl.'s Resp. to Mot. for Summ. J. [filed Apr. 1, 2008] [hereinafter "Def.'s Reply"].) This matter is fully briefed and ripe for review.

## ANALYSIS

### 1.    *Legal Standard*

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (2008); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works*, 36 F.3d at 1518 (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e)(2) (2008). A fact in dispute is "material" if it might affect the outcome of the suit under the governing law; the dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997) (citing *Anderson*, 477 U.S. at 248). The court may consider only admissible evidence when ruling on a summary judgment motion. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998) (citing *Concrete Works*, 36 F.3d at 1517).

## 2.    *Evaluation*

Plaintiff asserts claims for age and disability discrimination relating to Defendant's failure to promote him on two separate, but unspecified, occasions, and also alleges that these decisions constituted retaliation against him for various unspecified acts. (*See* Am. Compl. ¶¶ 12, 17.) In his response to Defendant's summary judgment brief, Plaintiff also arguably advances a claim of constructive discharge. (*See* Pl.'s Resp. at 6–7, 15.) I assess each of these claims in turn.

### a.     *Age Discrimination*

Although Plaintiff purports to base his age discrimination claim upon Title VII of the Civil Rights Act of 1964 ("Title VII"), or the Rehabilitation Act of 1973 ("Rehabilitation Act"), (*see, e.g.*, Am. Compl. ¶ 17), I find that such reliance is misplaced because age is not a protected class under Title VII, and the Rehabilitation Act only bars discrimination on the basis of disability in the public sector. *See* 42 U.S.C. § 2000e-2(a)(1) (2006) (barring discrimination on the basis of "race, color, religion, sex, or national origin"); 29 U.S.C. § 794 (2006) (barring discrimination against qualified individuals in the public sector "solely by reason of her or his disability"). Instead, the appropriate — and, as far as the court is aware, exclusive — statutory vehicle for Plaintiff's age discrimination claim against Defendant is the federal-sector provision of the Age Discrimination in Employment Act ("ADEA"). *See* 29 U.S.C. § 633a(a) (2000 ed. Supp. V.) (stating that "all personnel actions affecting employees . . . in the United States Postal Service . . . shall be free from any discrimination based on age"). Accordingly, I analyze Plaintiff's age discrimination claim under the ADEA.

In the absence of direct evidence of discrimination, age discrimination claims brought pursuant to the ADEA are analyzed under the familiar *McDonnell Douglas* burden-shifting framework. *See Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002); *see also McDonnell Douglas v. Green*, 411 U.S. 792, 801–05 (1973). To establish a *prima facie* case of age discrimination based upon failure to promote, Plaintiff must present evidence that: (1) he was a member of a protected class; (2) he applied for and was qualified for the position; (3) despite being qualified he was rejected; and (4) after he was rejected, the position was filled by someone outside the protected class, or that the position remained open and Defendant continued to seek applicants from persons of Plaintiff's qualifications. *Mackenzie v. City and County of Denver*, 414 F.3d 1266, 1277–78 (10th Cir. 2005); *Kendrick v. Penske Trasp. Servs. Inc.*, 220 F.3d 1220, 1071 (10th Cir. 2000). If Plaintiff meets this burden, the burden shifts to Defendant to state a legitimate, non-discriminatory reason for its employment decision. *See, e.g.*, *Stover v. Martinez*, 382 F.3d 1064, 1070–71 (10th Cir. 2004) (laying out *McDonnell Douglas* burden-shifting framework in the context of a Title VII action). If Defendant meets this burden, the burden shifts back to Plaintiff to establish that Defendant's proffered reason is pretextual. *Id.* at 1071.

In the instant case, Defendant concedes that Plaintiff is a member of a protected class and that he was not selected for positions that were filled by other applicants. (*See* Def.'s Br. at 8); *see also* 29 U.S.C. § 633a(a) (2000 ed. Supp. V.) (stating that the federal-sector provision of the ADEA protects "employees who are at least [forty] years of age"). Nonetheless, Defendant argues that Plaintiff cannot prove any potential ADEA claim because: (1) it is undisputed that at least Ms. Davis and Ms. Luongo were also members of Plaintiff's protected class; (2) Defendant

articulated legitimate, non-discriminatory reasons for not promoting Plaintiff to the "facilities contract technician" and "facilities contract specialists" positions in 2003; (3) Defendant's January 2004 denial of Plaintiff's request for deviation from the EAS designation requirement for the "contract transportation specialist" position was not an adverse employment action sufficient to impose ADEA liability; (4) Defendant articulated a legitimate, non-discriminatory reason for denying this request; and (5) Plaintiff cannot show that Defendant's reasons for not promoting him in 2003 and for denying his request in 2004 were pretextual. (Def.'s Br. at 8–10.) Plaintiff, by contrast, ignores most of these arguments, and never directly discusses his purported age discrimination claim in his brief. (*See* Pl.'s Resp.) For the following reasons, I find that Plaintiff has not adduced sufficient evidence to demonstrate a triable issue of fact as to this claim.

First, in failing to address Defendant's ADEA arguments in his brief, Plaintiff also necessarily fails to establish even the most basic premises of his age discrimination claim, such as which of Defendant's employment actions were allegedly ageist. Nonetheless, reading his complaint and response extremely generously, it is conceivable that he is asserting that Defendant discriminated against him on the basis of age by: (1) not promoting him to the "facilities contract technician" and "facilities contract specialist" positions in October and November 2003; (2) denying his request for deviation from the EAS designation requirement for the "contract transportation specialist" position in January 2004; and (3) denying a similar request for deviation from a requirement for a "contract transportation position" in March 2002. I assess each of these potential adverse employment actions in turn.

       i.       ***Defendant's Failure to Promote Plaintiff in October and November 2003***

With respect to Defendant's failure to promote Plaintiff to the "facilities contract technician" and "facilities contract specialist" positions in October and November 2003, I find that Plaintiff has failed to demonstrate a triable issue of fact as to either: (1) the fourth element of his *prima facie* case; or (2) whether Defendant's proffered rationale for selecting Ms. Davis, Ms. Carney, and Ms. Luongo were pretextual.

As to Plaintiff's *prima facie* case, it is undisputed that Ms. Davis and Ms. Luongo were over the age of forty at the time of their selection, and thus were members of Plaintiff's own protected class. (Def.'s Br., SOF ¶¶ 49–50; *admitted at* Pl.'s Resp., RSOF ¶¶ 49–50); 29 U.S.C. § 633a(a) (2000 ed. Supp. V.) (stating that the federal-sector provision of the ADEA protects "employees who are at least [forty] years of age"). Moreover, Plaintiff has pointed to no evidence that Ms. Carney was not in Plaintiff's protected class. As such, Plaintiff has failed to demonstrate a triable issue of fact as to whether, after he was rejected for these two positions, they were either filled by someone outside of the protected class, or remained open and Defendant continued to seek applicants from persons of Plaintiff's qualifications. *Mackenzie*, 414 F.3d at 1277–78; *Kendrick*, 220 F.3d at 1071. Accordingly, I find that Plaintiff cannot prove a *prima facie* case of age discrimination relating to these hirings.

Alternatively, with respect to whether Defendant's proffered rationale for hiring Ms. Davis, Ms. Carney, and Ms. Luongo over Plaintiff were pretexutal, Plaintiff himself admits Mr. LaShier selected Ms. Davis and Ms. Carney for the "facilities contract technician" positions because he felt they were the most qualified applicants. (*Id.*, SOF ¶ 11; *admitted at* Pl.'s Resp., RSOF ¶ 11.) Plaintiff further admits that Ms. Davis was deemed more qualified than Plaintiff

because she had been detailed to the "facilities contract technician" position for several months prior to her selection, and that Ms. Carney was deemed more qualified than Plaintiff because she had specific experience in this position due to her work as Mr. LaShier's administrative assistant. (*Id.*, SOF ¶¶ 12–13; *admitted at* Pl.'s Resp., RSOF ¶ 12–13).  By contrast, Plaintiff acknowledges that he did not have such relevant experience.  (*See id.*, SOF ¶ 14; *admitted at* Pl.'s Resp., RSOF ¶ 14.)  Plaintiff also admits that Mr. LaShier selected Ms. Luongo for the "facilities contract specialist" position because she had more years of experience in facilities contracting than Plaintiff, and admits that Ms. Luongo gave the best interview.  (*Id.*, SOF ¶¶ 16–18; *admitted at* Pl.'s Resp., RSOF ¶¶ 16–18.)  Nonetheless, in an apparent attempt to show that Defendant's proffered rationale for hiring Ms. Carney and Ms. Davis was pretextual,[1] Plaintiff invites this court to compare the respective applications for the "facilities contract technician" positions that he, Ms. Carney, and Ms. Davis submitted in September 2003.  (*See* Pl.'s Resp. at 8–9.)  These applications, as Plaintiff accurately states, represent that: (1) Plaintiff had been working in a "facilities contract specialist" position since March 2001, and had previously been a "contract technician" from 1996 to 2001; (2) Ms. Carney had worked as a "facilities contract technician" for only two months prior to her application; and (3) Ms. Davis had been working as a "facilities contract technician" only approximately eighteen months prior to her application.  (Pl.'s Resp. at 8–9, Ex. 3 at 2–7 [Applications].)  Nonetheless, despite Plaintiff's proffer of this evidence, I find that he has fallen far short of establishing a triable issue as to pretext.

---

[1]Plaintiff advances no such argument with respect to Ms. Luongo.

Pretext may be shown by "'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.'" *Riggs v. AirtTran Airways, Inc.*, 497 F.3d 1108, 1118 (10th Cir. 2007) (citation omitted). In assessing pretext, courts do not ask "whether the employer's reasons were wise, fair or correct; the relevant inquiry is whether the employer honestly believed its reasons and acted in good faith upon them." *Id*. (citation omitted). Moreover, courts "consider the facts as they appeared to the person making the decision," and do not "second-guess the employer's decision even if it seems in hindsight that the action taken constituted poor business judgment." *Id*. (citation omitted). Finally, in the context of promotion decisions, the Tenth Circuit has warned that "'pretext cannot be shown simply by identifying minor differences between plaintiff's qualifications and those of successful applicants,' but only by demonstrating an 'overwhelming merit disparity.'" *Santana v. City and County of Denver*, 488 F.3d 860, 865 (10th Cir. 2007) (analyzing pretext in context of a sex discrimination claim).

In the instant case, Plaintiff's invocation of the relative qualifications of himself, Ms. Carney, and Ms. Davis are of no moment because he has already admitted that Mr. LaShier "felt" that these latter individuals were the most qualified applicants. (*See* Def.'s Br., SOF ¶ 11; *admitted at* Pl.'s Resp., RSOF ¶ 11.) Mr. LaShier's subjective belief in hiring these individuals is thus not disputed, and Plaintiff's admission of this fact is dispositive of his pretext argument as it is well-established that a court's pretext inquiry must focus on whether an employer "honestly believed its reasons and acted in good faith upon them." *Riggs*, 497 F.3d at 1118 (citation

omitted).  Nonetheless, even if this court were to assume that Plaintiff's admission of this fact

should be excused, Plaintiff's invocation of the three employment applications still falls far short

of demonstrating a triable issue of fact as to pretext.  Plaintiff's only stated rationale for pointing to

his own work history is his vague claim that his experience as a "facilities contract specialist" and

a "contract technician" shows that he had worked in "a higher position."  (Pl.'s Resp. at 8.)

Nonetheless, Plaintiff does not specify *higher to whom* or *relative to what*.  Although the possible

interpretations of this claim are legion, I find that its proper interpretation is irrelevant as Mr.

LaShier's stated reason for selecting Ms. Carney and Ms. Davis over Plaintiff had nothing to do

with these three candidates' relative position on some abstract merit scale; rather his reason was

premised upon Ms. Carney's and Ms. Davis's experience in "facilities contract technician"

positions, which Plaintiff admits he did not have.  (Def.'s Br., SOF ¶¶ 12–14; *admitted at* Pl.'s

Resp., RSOF ¶¶ 12–14.)  Thus, whether or not Plaintiff's prior work history shows that his past

jobs were somehow "higher" than those of Ms. Carney and/or Ms. Davis, such evidence is

irrelevant to showing that Mr. Lashier's stated rationale for his employment decision was

pretextual.  Similarly, Plaintiff's argument that Ms. Carney had worked as a "facilities contract

technician" for only two months prior to her application, and that Ms. Davis had been working as a

"facilities contract technician" for only approximately eighteen months prior her application, are

also irrelevant to proving pretext because — based on Plaintiff's own acknowledgment of his lack

of comparable experience — these are two and eighteen months' more experience than Plaintiff

had.  (*See id.*, SOF ¶ 14; *admitted at* Pl.'s Resp., RSOF ¶ 14.)  Finally, even if Plaintiff's

exceptionally opaque argument were somehow premised upon a belief that his "facilities contract

specialist" and "contract technician" jobs were either the actual or functional equivalent of the "facilities contract technician" positions for which he was applying, and thus that he had years more experience in this field than either of the two employees selected, his argument would still fail because has not adduced any evidence upon which a fact-finder could base a meaningful comparison of these job, much less find them in parity. Indeed, Plaintiff has neither discussed in his briefing, nor pointed to any evidence discussing, the duties or responsibilities of these various positions, and has therefore failed to proffer sufficient evidence from which a reasonable fact-finder could infer that there was an "overwhelming merit disparity" between himself and Ms. Carney or Ms. Davis. *Santana*, 488 F.3d at 865. Accordingly, based on the foregoing, I find that Plaintiff has not demonstrated a triable issue of fact as to his age discrimination claim premised upon Defendant's failure to promote him in October and November 2003.

> ii.    *Defendant's January 2004 Denial of Plaintiff's Request for Deviation from the EAS Designation Requirement for the "Contract Transportation Specialist" Position*

As to whether Defendant's January 2004 denial of Plaintiff's request for deviation from the EAS designation requirement may have been discriminatory, I similarly find that Plaintiff has failed to demonstrate a triable issue of fact as to the fourth element of his *prima facie* case. Defendant has pointed to no evidence that this position: (1) was eventually filled by someone outside of Plaintiff's protected class; or (2) remained open and that Defendant continued to seek applicants from persons of Plaintiff's qualifications. *Mackenzie*, 414 F.3d at 1277–78; *Kendrick*, 220 F.3d at 1071. Alternatively, to the extent that Plaintiff might hope to rely upon direct proof of age discrimination, he has also failed to proffer any evidence disputing Ms. McGinty's affidavit

testimony relating that she did not know Plaintiff's age at the time she denied his request. (*See* Def.'s Br., Ex. A-5 ¶ 6 [McGinty Aff.].) Accordingly, I find that Plaintiff has failed to demonstrate a triable issue of fact as to his *prima facie* case of age discrimination premised upon Defendant's denial of his January 2004 request.

        iii.       ***Defendant's March 2002 Denial of Plaintiff's Request for Deviation from the EAS Designation Requirement for the "Contract Transportation Specialist" Position***

Finally, Plaintiff additionally hints in a single sentence of his brief that Defendant may have discriminated against him by denying a similar request for waiver from a job application requirement in March 2002. (Pl.'s Resp. at 12.) Putting aside the questions of whether this claim is properly before the court as it was never asserted in Plaintiff's complaint, and ignoring the fact that Plaintiff has proffered no evidence that such a complaint was ever presented to the EEO in satisfaction of his exhaustion requirements, I find that the two letters Plaintiff points to for proof of this claim — standing alone — are insufficient to demonstrate a triable issue of fact as to a *prima facie* case of age discrimination. These letters, like those sent between Plaintiff and Ms. McGinty in January 2004, consist of: (1) Plaintiff's request for waiver of an application requirement for a "contract transportation specialist" position; and (2) Ms. McGinty response denying this request. (Def.'s Br., Ex. A-3 at 7–8 [March 2002 Letters].) For obvious reasons, these letters fall far short of demonstrating any triable issue of fact as to whether the position: (1) was eventually filled by someone outside of Plaintiff's protected class; or (2) remained open and that Defendant continued to seek applicants from persons of Plaintiff's qualifications. *Mackenzie*, 414 F.3d at 1277–78; *Kendrick*, 220 F.3d at 1071. Moreover, Ms. McGinty's above-referenced denial that she had any

knowledge of Plaintiff's age in January 2004 applies with equal force to her 2002 denial of Plaintiff's request for waiver because, in her August 2004 affidavit, Ms. McGuinty averred that: "I was not [in January 2004] nor am I now aware of [Plaintiff's] . . . age." (*See* Def.'s Br., Ex. A-5 ¶ 6 [McGinty Aff.].) According, I find that Plaintiff has failed to demonstrate a triable issue of fact as to his *prima facie* case of age discrimination premised upon Defendant's 2002 denial of his request for waiver.

### b. Disability Discrimination

In contrast to his age discrimination claim, Plaintiff's disability discrimination claim is properly premised upon the Rehabilitation Act which states, in relevant part, that:

> No otherwise qualified individual with a disability . . . shall solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity conducted by . . . the United States Postal Service.

29 U.S.C. § 794(a) (2006); (*see also* Am. Compl. ¶ 17.) The Rehabilitation Act further recites that the substantive standards to be used to determine whether an employee has been discriminated against on the basis of disability "shall be the standards applied under title I of the Americans with Disabilities Act of 1990" ("ADA"). *Id.* § 794(d); *see also Corley v. Dep't of Veterans Affairs*, 218 F. App'x 727 (10th Cir. 2007) ("The standard [for a *prima facie* case] applied under the ADA is also used to determine whether an act of discrimination violates the Rehabilitation Act.").

To state a *prima facie* case under the ADA, Plaintiff must establish that: (1) he is "disabled" within the meaning of the ADA; (2) he is "qualified;" and (3) he suffered an adverse employment action because of his disability. *See Poindexter v. Atchison, Topeka & Santa Fe Ry.*,

168 F.3d 1228, 1230 (10th Cir. 1999). Once Plaintiff has established a *prima facie* case, Defendant bears the burden of producing a legitimate, nondiscriminatory reason for its adverse employment action. *Butler v. City of Prairie Vill.*, 172 F.3d at 747 (10th Cir. 1999) (citation omitted). If Defendant produces such a reason, Plaintiff has the burden of proving this reason was pretextual. *Id*. at 747–48 (citation and quotation marks omitted).

In the instant case, Defendant essentially argues that Plaintiff cannot establish the first or third elements of his *prima facie* case because he cannot demonstrate that he: (1) is disabled; or (2) suffered an adverse employment action because of his disability. (Def.'s Br. at 11–12; Def.'s Reply at 8–9.) I assess each argument in turn.

### i.     Whether Plaintiff Was Disabled Within the Meaning of the ADA

The ADA defines "disability" as: (1) "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual;" (2) "a record of such an impairment;" or (3) "being regarded as having such an impairment." 42 U.S.C. § 12102(2)(A)–(C) (2006). Plaintiff claims that he is disabled under each of these three definitions. (*See* Pl.'s Resp. at 11.) I address each definition in turn.

### (a)     Physical or Mental Impairment That Substantially Limits One or More Major Life Activities

"Major life activities" are defined under the regulations implementing the ADA as: "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i) (2008); *see also* 29 C.F.R. § 1614.203 (2008) (adopting by incorporation these regulations into the regulations implementing the

Rehabilitation Act). The Tenth Circuit has specified that this list is not exclusive, and that a "major life activity," is "a basic activity that the average person in the general population can perform with little or no difficulty." *Pack v. Kmart Corp.*, 166 F.3d 1300, 1305 (10th Cir. 1999). To be "substantially limited" in a major life activity, a plaintiff must be "severely restrict[ed]" or restricted "to a large degree" in her ability to perform the major life activity. *Toyota Motor Mfg. v. Williams*, 534 U.S. 184, 196–98 (2002). A physical or mental impairment is "substantially limiting" if an individual is "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." *Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1130 (10th Cir. 2003) (citation omitted). In assessing whether an impairment is substantially limiting, the court takes into consideration any corrective or mitigating measures which an individual utilizes, such as medication. *Id.* at 1130.

In the instant case, Plaintiff contends that he was substantially limited in the major life activities of sex and working. (*See* Pl.'s Resp. at 11.) Defendant cagily responds that: (1) "decreased interest in sex is not a substantial limitation to a major life activity;" and (2) Plaintiff has not demonstrated a substantial limitation in the major life activity of working. (Def.'s Reply at 8.) I assess each of these major life activities in turn.

A. PLAINTIFF'S LIMITATION IN THE MAJOR LIFE ACTIVITY OF SEX — In *Bragdon v. Abbott*, 524 U.S. 624 (1998), in discussing an ADA claim premised upon the disability of HIV infection, the Supreme Court held that reproduction is a major life activity. *See* 524 U.S. at 638. In so

holding, the Court noted that "[r]eproduction and the sexual dynamics surrounding it are central to the life process itself." *Id.*

The Tenth Circuit has not yet passed upon whether sex simpliciter constitutes a major life activity, but appears to have assumed without deciding that it does in at least one case. *See Swart v. Premier Parks Corp.*, 88 F. App'x 366 (10th Cir. 2004) (holding that a plaintiff had not adduced sufficient evidence to prove that her breast cancer interfered with the putative major life activities of reproduction and sexual activity). The only circuit court to have explicitly ruled on the issue found that sexual relations — even devoid of procreative intent — constitutes a major life activity. *See McAlindin v. County of San Diego*, 192 F.3d 1226 (9th Cir. 1999) *opinion amended on denial of reh'g* 201 F.3d 1211 (9th Cir. 2000). As the Ninth Circuit in *McAlindin* explained:

> [E]ngaging in sexual relations, just like procreation, is a major life activity. The number of people who engage in sexual relations is plainly larger than the number who choose to have children. Moreover . . . sexuality is important in how we define ourselves and how we are perceived by others and is a fundamental part of how we bond in intimate relationships.

*Id.* at 1234 (citation and internal quotation marks omitted). At least two district courts in this circuit have adopted similar reasoning, interpreting *Bragdon* to hold that sex simpliciter constitutes a major life activity. *See Prasueth v. Newell-Rubbermaid, Inc.*, 219 F. Supp. 2d 1157, 1184–85 & n.3 (D. Kan. 2002) (noting that while *Bragdon* "was, generally, discussing the ability to reproduce, the court was clearly analyzing the activities that make up the process as reproduction is a result and not an activity"); *Keller v. Bd. of Educ.*, 182 F. Supp. 2d 1148, 1155 (D.N.M. 2001) (citing *Bragdon* for the proposition that "[s]exual intercourse and reproduction are recognized as major life activities").

In the instant case, I agree with the Ninth Circuit's reasoning, and find that sex is "a basic activity that the average person in the general population can perform with little or no difficulty." *Pack*, 166 F.3d at 1305. Accordingly, I find that sex is a major life activity within the meaning of the ADA. I additionally find that Plaintiff has proffered sufficient evidence to suggest a substantial limitation in this major life activity. In his deposition, Plaintiff avers that, due to his back pain, he has "no sexual relations with [his] wife . . . because the excitement that [he] once used to get was no longer exciting, it was more painful." (Def.'s Br., Ex. A-9 at 23 [Bondarenko Dep.].) Moreover, Plaintiff claims that he has not had sexual relations for "years," explaining: "[i]f it creates a lot of pain, I'm not going to do it." (*Id.*, Ex. A-9 at 23–24 [Bondarenko Dep.].) Reading such testimony in the light most favorable to Plaintiff, I find that he has adduced sufficient evidence to demonstrate a triable issue of fact as to whether he is "significantly restricted as to the condition, manner or duration" of his ability to have sex comparted to the average person in the general population. *Doebele*, 342 F.3d at 1130.

In arguing against the above conclusion, Defendant points to only one inapposite and non-binding case, in which the Seventh Circuit held that a plaintiff's reduced sexual drive and problems with impotence did not constitute "a substantial limitation in the major life activity of reproduction." *Scheerer v. Potter*, 443 F.3d 916, 921 (7th Cir. 2006). In reaching this holding, the court passed on the issue of whether sex simpliciter might constitute a major life activity, but found that Plaintiff's proffered evidence would be insufficient to demonstrate a substantial limitation in this activity because "he concedes that he is still able to engage in sexual activity, although it requires limited medical assistance." *Id*. Plaintiff's evidence in the instant case is

readily distinguishable because, unlike in *Scheerer*, Plaintiff asserts that he is completely incapable of having sex, and that he has been so for years. (*See* Def.'s Br., Ex. A-9 at 23–24 [Bondarenko Dep.].) Accordingly, I find that *Scheerer* is unpersuasive authority on the sufficiency of Plaintiff's proffered evidence, and is thus inapposite to prove the insufficiency of this evidence as a matter of law.

B. PLAINTIFF'S LIMITATION IN THE MAJOR LIFE ACTIVITY OF WORKING — Plaintiff also asserts, for the first time in his response brief, that he is substantially limited in the major life activity of working. As proof, he points to two pages of his deposition in which he claims that: (1) he is "disabled completely from working at [his] old letter carrier job;" and (2) a problem with a herniated disk in his back causes him to have pain when he works. (Pl.'s Resp., Ex. 1 at 12–13 [Bondarenko Dep.].)

First, I find that Plaintiff's "deposition" testimony pertaining to his alleged inability to perform his letter carrier job to be the functional equivalent of a sham affidavit. The "deposition" page Plaintiff cites for this fact is actually a handwritten "amendment" to his deposition, ostensibly clarifying that working, in addition to sex, are the major life activities in which he claims a limitation because Defendant's counsel "didn't let [Plaintiff] finish" his answer during his deposition. (*See* Pl.'s Resp., Ex. 1 at 12 [Bondarenko Dep.].) Although this handwritten "amendment" is notarized, the date of the notarization — March 6, 2008 — falls within the time frame after Defendant's motion for summary judgment, but before Plaintiff's response. (*See id.*) I admonish Plaintiff for what appears to be a furtive attempt to sidestep the sham affidavit rule by purporting to merely cite his own deposition testimony while actually citing the functional

equivalent of a self-serving affidavit, and hold that this evidence must be excluded under the sham affidavit rule.  *See, e.g.*, *Juarez v. Utah*, No. 06-4254, 2008 WL 313671, at *4–7 (10th Cir. 2008) (finding that district court did not abuse discretion in excluding a plaintiff's evidence submitted in an affidavit that arguably contradicted her previous deposition testimony because such statements effectively sandbagged the defendant by precluding it from conducting discovery on the statements).

Alternatively, even were I to consider Plaintiff's evidence, I would still find that it falls far short of demonstrating a triable issue of fact as to whether Plaintiff was substantially limited in the major life activity of working.  While it is well-established that working constitutes a major life activity within the meaning of the ADA, the Supreme Court has held that, "[w]hen the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs."  *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 491 (1999).  In the instant case, not only does Plaintiff fail to advance such an allegation, but his affirmative evidence and representations in his brief positively disclaim such a representation.  In his deposition, Plaintiff testified only that he is "completely disabled from working *at [his] old letter carrier job*," and he admits on the same page of his deposition in which he claims back pain that this condition "does not restrict [him] from working." ( Pl.'s Resp., Ex. 1 at 12–13 [Bondarenko Dep.] [emphasis added].)  Similarly, Plaintiff admits that he currently works as a shelf-stocker at Wal-Mart, and that he did not advise Wal-Mart of any physical work restrictions.  (Def.'s Br., SOF ¶¶ 41, 43; *admitted at* Pl.'s Resp., RSOF ¶¶ 41, 43.)  Lastly, Plaintiff represents in his brief that, following his purported termination from Defendant,

he has "worked at various other positions, including a temporary job as a contract specialist position [sic] with Systems Development Corporation, stocker at Wal-Mart, and material handler with Direct TV." (Pl.'s Resp. at 7 [internal citations omitted].) Accordingly, based on the foregoing, I find that Plaintiff has failed to demonstrate a triable issue of fact as to whether his back injury precluded him from performing a broad class of jobs, and hence whether he was substantially limited in the major life activity of working.

### *(b)    Record of Impairment*

To prove disability through a record of impairment, a plaintiff must prove five elements: "(1) the plaintiff has a record of, or has been misclassified as having, (2) a recognized impairment that (3) the plaintiff 'actually suffered' and that (4) substantially limited (5) a major life activity." *Zwygard v. Bd. of County Comm'rs*, 483 F.3d 1086, 1091 (10th Cir. 2007) (citation omitted). In the instant case, because I have already found that Plaintiff cannot demonstrate a substantial limitation in the major life activity of working, his ability to prove disability through a record of impairment could only potentially reinforce my holding that he was arguably disabled in the major life activity of sex. Accordingly, I decline to consider Plaintiff's "record of impairment" argument as its resolution would add nothing to my above-findings.

### *(c)    Regarded as Having an Impairment*

To prove disability in a "regarded as" claim, a plaintiff must show that an employer: (1) had a mistaken belief about the plaintiff's abilities; and (2) mistakenly believed that the impairment substantially limited the employee in one or more major life activities. *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1190 (10th Cir. 2007). In the instant case, Plaintiff's only proffered

evidence pertaining to his "regarded as" claim is the affidavit testimony of one of his former supervisors, who states:

> I personally witnessed [Plaintiff] suffer discrimination at his workplace with the U.S. Postal Service because of the perception of his disability status. This discrimination was on the part of his Office Manager, Mr. Rick Pivovar, who treated [Plaintiff] with disdain and dislike because he had medical restrictions.

(Pl.'s Resp., Ex. 4 ¶ 3 [Roberts Aff.].) For the following reasons, I find this evidence insufficient to demonstrate a triable issue of fact as to Plaintiff's disability under a "regarded as" claim.

Federal Rule of Civil Procedure 56(e)(1) states in relevant part that an affidavit supporting a summary judgment motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e)(1) (2008). The Tenth Circuit "has long held that 'conclusory allegations without specific supporting facts have no probative value.'" *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1143 (10th Cir. 2005) (quoting *Nichols v. Hurley*, 921 F.2d 1101, 1113 [10th Cir. 1990]). In the instant case, Plaintiff's proffered affidavit asserts that Mr. Pivovar discriminated against Plaintiff "because of the perception of his disability status," but sets forth no evidence suggesting that Mr. Roberts is competent to testify to Mr. Pivovar's state of mind. Accordingly, I find that this statement is a mere "conclusory allegation" devoid of probative value. *Fitzgerald*, 403 F.3d at 1143. Moreover, even were I to assume that Mr. Roberts were somehow competent to testify to Mr. Pivovar's state of mind, I would still find this affidavit insufficient to demonstrate a triable issue of fact as to Plaintiff's "regarded as" claim because this affidavit contains absolutely no indication that Mr. Pivovar's perception of Plaintiff's disability was either mistaken, or that Mr.

Pivovar believed Plaintiff was: (1) unable to have sex; (2) unable to perform a broad class of jobs; or (3) otherwise substantially limited in any major life activity. (*See* Pl.'s Resp., Ex. 4 [Roberts Aff.]); *see also Jones*, 502 F.3d at 1190. Accordingly, I find that Plaintiff cannot show disability under a "regarded as" claim.

> ### ii.     Whether Plaintiff Suffered an Adverse Employment Action Because of His Disability

Having determined that Plaintiff's only arguable disability within the meaning of the ADA is the substantial limitation in his inability to have sex due to a back injury, I turn to whether Plaintiff has adduced sufficient evidence that he suffered an adverse employment action because of this disability. The Tenth Circuit has held that, to prove the third element of a *prima facie* case of disability discrimination, a Plaintiff must show that "the employer [took an adverse employment action] under circumstances which give rise to an inference that the [action] was based on [the plaintiff's] disability." *See Bones v. Honeywell Intern., Inc.*, 366 F.3d 869, 878 (10th Cir. 2004) (citation omitted). To show such a causal connection, Plaintiff must provide "some evidence that [his] disability was a determining factor in [Defendant's] decision [to take an averse employment action]." *Id.*; *see also Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1259 (10th Cir 2001).

In the instant case, Plaintiff claims Defendant committed disability discrimination by denying his March 2002 and January 2004 requests for waivers from job application requirements. (*See* Pl.'s Resp. at 12.) Nonetheless, Plaintiff has proffered no evidence that Ms. McGinty knew about his alleged disability when she denied these requests, or that her affidavit testimony relating that she "did not have knowledge of [Plaintiff's] physical limitations, if any" is untrue. (*See* Def.'s

Br., Ex. A-5 ¶ 8 [McGinty Aff.].)  Accordingly, because Plaintiff has proffered no evidence from

which a reasonable fact-finder could deduce that Ms. McGinty knew about Plaintiff's alleged

disability — much less from which it could infer that this knowledge "was a determining factor" in

her decision to deny his requests for waiver — I find that Plaintiff has failed to show a triable issue

of fact as to a causal connection between these adverse employment actions and his alleged

disability.  *Bones*, 366 F.3d at 878.

      *c.*     **Retaliation**

      Like Plaintiff's misplead age discrimination claim, Plaintiff erroneously premises his

retaliation claim upon Title VII.  (*See* Compl. ¶ 17; Pl.'s Resp. at 13.)  Nonetheless, despite this

error, I note that both the ADEA and the ADA support claims for retaliation.  *See Gomez-Perez v.*

*Potter*, — S. Ct. —, 2008 WL 2167189, at *6 (May 27, 2008) (interpreting the ADEA's federal-

sector provision's prohibition of "discrimination based on age" as proscribing retaliation); 42

U.S.C. § 12203(a) (2006) (making it unlawful under the ADA to "discriminate against any

individual because such individual has opposed any act or practice made unlawful by this

chapter").

      To state a *prima facie* case for retaliation under either the ADEA or ADA, Plaintiff must

show: "(1) that he engaged in protected opposition to discrimination, (2) that a reasonable

employee would have found the challenged action materially adverse, and (3) that a causal

connection existed between the protected activity and the materially adverse action."  *Proctor v.*

*United Parcel Serv.*, 502 F.3d 1200, 1208 (10th Cir. 2007) (listing elements of *prima facie* case of

retaliation under the ADA); *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1202 (10th Cir. 2008) (listing identical elements under the ADEA).

In the instant case, Plaintiff's only concrete contention pertaining to his retaliation claim is that Defendant's January 2004 denial of his request for a waiver from the job application requirement constituted retaliation against him for his December 2003 complaint to an EEO counselor. (*See* Pl.'s Resp. at 14.) In replying to this argument, Defendant argues that Plaintiff cannot prove the second or third elements of his *prima facie* case because he cannot show: (1) this denial was a materially adverse action; or (2) that a causal connection existed between Ms. McGinty's denial and Plaintiff's complaint to the EEO. (*See* Def.'s Reply at 7–8.) For the following reasons, I agree with Defendant's second argument, and decline to consider its first.

The Tenth Circuits holds that, "[a]s a prerequisite" to showing a causal connection between a plaintiff's protected conduct and an adverse employment action, a plaintiff must "first come forward with evidence from which a reasonable factfinder could conclude that those who [took an adverse employment action against the plaintiff] had knowledge of his protected activity." *Hinds*, 523 F.3d at 1202; *see also Williams v. Rice*, 983 F.2d 177, 181 (10th Cir. 1993). In the instant case, Ms. McGinty avers that, in January 2004, she was "not aware of [Plaintiff's] prior EEO activity" and "was not aware . . . of any EEO activity, prior or current, for any applicants whom may have made application for the vacancy in question." (Def.'s Br., Ex. A-5 ¶ 11 [McGinty Aff.].) Because Plaintiff has proffered no evidence casting doubt on these claims, I find that he has not demonstrated a triable issue of fact as to whether Ms. McGinty knew of his EEO activity when she denied his request in January 2004.

### d. Constructive Discharge

Lastly, as indicated above, Plaintiff's complaint and response brief may charitably be read as suggesting a constructive discharge claim.  Nonetheless, to prove such a claim under either the ADEA or the ADA, Plaintiff must show that, "because of [his] age or . . . disability, [D]efendant subjected [him] to working conditions so intolerable that a reasonable person would feel compelled to resign."  *McCrary v. Aurora Pub. Sch.*, 57 F. App'x 362, 374 (10th Cir. 2003).  Because Plaintiff has pointed to no evidence speaking to his working conditions prior to his alleged firing or forced resignation, I find there is no triable issue of fact as to whether Defendant subjected him to "working conditions so intolerable that a reasonable person would feel compelled to resign."  *McCrary*, 57 F. App'x at 374.

### 3. Conclusion

Based on the foregoing it is therefore ORDERED that:

1. PLAINTIFF's motion to amend his complaint (#12) is GRANTED; and

2. DEFENDANT's motion for summary judgment (#21) is GRANTED.

The clerk shall forthwith enter judgment in favor of Defendant and against Plaintiff, dismissing Plaintiff's claims with prejudice.  Defendant may have its costs by filing a bill of costs within eleven days of the date of this order.

Dated this 18th day of June, 2008.

BY THE COURT:

s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
Chief United States District Judge